FILED

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

99 MAY 26  PM 2: 56

U.S. DISTRICT COUR
N.D. OF ALABAMA

MARILYN GUYTON,                    )

    PLAINTIFF,                     )

VS.                                )      CV-97-H-2692-S

CITY OF BIRMINGHAM, a municipal )
corporation; Individually,
RICHARD ARRINGTON, JR., Mayor;  )
DEMETRIUS C. NEWTON, City
Attorney; W. GORDON GRAHAM,     )
Director of Personnel;
WILLIAM M. PATE, JR., Chief     )
Asst. Attorney; JOHN EDENS,
Asst. City Attorney; MICHAEL    )
MELTON, Asst. City Attorney;
PATRICIA BURNS, Asst. City      )
Attorney; PATRICIA S. POWELL,
Senior Legal Secretary;         )
JACQUELINE BELCHER, Claims
Administrator; and              )
J.L. CHESTNUT, III
                                )

    DEFENDANTS.

ENTERED

MAY 2 6 1999

## MEMORANDUM OF DECISION

The Court has before it the March 31, 1999 motion of

defendants for summary judgment.  Pursuant to the Court's April

2, 1999 order, the motion was deemed submitted, without oral

argument, on April 28, 1999.

### I. Procedural History

Plaintiff Marilyn Guyton commenced this action on October 8,

1997 by filing a complaint[1] in this Court alleging various
wrongful conduct by her employer, defendant City of Birmingham,
and her supervisors and co-workers, the individual defendants.
Plaintiff contended that defendants' alleged conduct constitutes
(1) retaliation under Title VII; (2) disparate treatment on the
basis of sex and/or race under Title VII; (3) sexual harassment
in the form of a hostile work environment under Title VII; (4)
outrage under state law; and (5) invasion of privacy under state
law.  Defendants' March 31, 1999 motion for summary judgment
asserts that plaintiff has failed to establish a prima face case
for any of plaintiff's claims.  Defendants filed an evidentiary
submission on April 7, 1999 and a supporting brief on April 14,
1999.  Plaintiff filed an evidentiary submission on April 20,
1999 and a brief in opposition to the motion on April 28, 1999.

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary
judgment is proper "if the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any

---

[1] Plaintiff filed an amended complaint on June 1, 1998 after
United States District Judge Propst's October 10, 1997 order
directing that counsel be appointed to represent plaintiff was
vacated.

2

material fact and that the moving party is entitled to judgment
as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322
(1986). The party asking for summary judgment always bears the
initial responsibility of informing the court of the basis for
its motion and identifying those portions of the pleadings or
filings which it believes demonstrate the absence of a genuine
issue of material fact. Id. at 323. Once the moving party has
met his burden, Rule 56(e) requires the nonmoving party to go
beyond the pleadings and by his own affidavits, or by the
depositions, answers to interrogatories, and admissions of file,
designate specific facts showing that there is a genuine issue
for trial. Id. at 324.

The substantive law will identify which facts are material
and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 248 (1986). All reasonable doubts about the facts and
all justifiable inferences are resolved in favor of the non-
movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th
Cir. 1993). A dispute is genuine "if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party."
Anderson, 477 U.S. at 248. If the evidence is merely colorable,
or is not significantly probative, summary judgment may be
granted. Id. at 249.

3

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. Fitzpatrick, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not

4

bear the burden of proof at trial can satisfy its initial burden

on summary judgment is to <u>affirmatively</u> show the absence of

evidence in the record to support a judgment for the non-moving

party on the issue in question.  This method requires more than a

simple statement that the non-moving party cannot meet its burden

at trial but does not require evidence negating the non-movant's

claim; it simply requires the movant to point out to the district

court that there is an absence of evidence to support the non-

moving party's case.  <u>Fitzpatrick</u>, 2 F.3d at 1115-16.  If the

movant meets its initial burden by using this second method, the

non-moving party may either point out to the court record

evidence, overlooked or ignored by the movant, sufficient to

withstand a directed verdict, or the non-moving party may come

forward with additional evidence sufficient to withstand a

directed verdict motion at trial based on the alleged evidentiary

deficiency.  However, when responding, the non-movant can no

longer rest on mere allegations, but must set forth evidence of

specific facts.  <u>Lewis v. Casey</u>, 518 U.S. 343, 358 (1996) (citing

<u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992)).

### III. Relevant Undisputed Facts

Plaintiff, a black female, works as a paralegal for the City

of Birmingham.  Throughout her employment, plaintiff has been

given heavy work assignments, while other paralegals are not.
(Guyton Aff. ¶ 2.)  Plaintiff has repeatedly requested clerical
assistance and a better office, as late as August of 1997.
(Guyton Dep'n at 155-56; 8/7/97 Memorandum from Guyton to Pate.)
Plaintiff has not been given her own office, while paralegals Ken
Robinson and J.L. Chestnut have.  (Guyton Dep'n at 153-56.)
Plaintiff's office has poor ventilation and is usually either too
hot or too cold.  (Guyton Dep'n Exh. 19.)

In 1992, City Attorney Demetrius Newton once asked plaintiff
out to have a drink.  (Guyton Aff. ¶ 2; Guyton Dep'n at 206-10.)
In 1993, Newton yelled "get on the couch" to plaintiff on ten to
twenty occasions as she walked past his office.  (Guyton Dep'n at
212-15.)  In late 1993, Newton once told plaintiff that she
"haven't had nothing until you have had this old black dude."
(Guyton Dep'n at 217.)

In 1993, there was a dispute as to the validity of
plaintiff's paralegal certification, during which Claims
Administrator Jacqueline Belcher obtained a copy of plaintiff's
transcript from Faulkner University under false pretenses.
(Guyton Aff. ¶ 3.)

In November of 1993, Newton told plaintiff that he "was
going to run [her] off" because she was not doing what he wanted

6

her to do.  (Guyton Dep'n at 226-227.)  In 1994, Newton referred
to himself as "Lover D" while they were discussing plaintiff's
application for medical leave.  (Guyton Dep'n at 223-26.)

Plaintiff made several complaints regarding incidents of
rude or unprofessional conduct by various coworkers in late 1994
and early 1995.  (Pate Aff. ¶ 7; Guyton Dep'n Exhs. 7 & 15.)  The
City's Personnel Department conducted an investigation into the
complaints.  (Pate Aff. ¶ 7.)  Once the investigation was
concluded, Chief Assistant Attorney William Pate conducted
individual counseling sessions with the staff members, urging
each employee to get along with coworkers, and each staff member
signed a memorandum containing Pate's advice.  (Pate Aff. ¶ 7.)
Plaintiff refused to sign the memorandum, so Pate gave her a
disciplinary action warning for insubordination.  (Pate Aff. ¶
7.)  Plaintiff responded by filing a grievance against Pate for
"unjust" conduct.  (Pate Aff. ¶ 7.)

Plaintiff was suspended for two days (April 4 and 5, 1995)
for initiating rude physical contact between herself and
Jacqueline Belcher by walking into Belcher in the hall.  (5/3/95
Memorandum from Thompson to Arrington; Graham Aff. ¶ 5.)
Following the suspension, Newton told plaintiff that she needed
to "get with [him]" so that he could "stop" Belcher; plaintiff

7

interpreted this comment as a suggestion that she have sexual
relations with Newton.  (Guyton Dep'n at 221-25.)

From April 1993 through April 6, 1995, plaintiff
consistently received excellent scores on her performance
evaluations.  (Guyton Dep'n Exhs. 39-43.)

On April 28, 1995, plaintiff filed an EEOC charge of
discrimination against the City of Birmingham Law Department.
(4/28/95 EEOC Charge of Discrimination, No. 130951687.)  A right
to sue letter was issued to plaintiff, but plaintiff did not file
a lawsuit within the required 90 days of receiving the right to
sue letter.  (10/17/95 EEOC Determination Letter, Charge No.
130951687.)

In November 1995, plaintiff received a "below expectations"
mark on her performance appraisal form in the "meets departmental
requirements on compliance with rules, policies, and procedures"
category and a "needs improvement" mark in the "delivers
subpoenas" and "files legal documents" categories.  (Guyton Dep'n
Exh. 37.)

On December 14, 1995, plaintiff was asked by senior legal
secretary Patricia Powell (secretary for plaintiff's supervisor,
William Pate) to deliver a document and refused to do so because
another paralegal was assigned to make deliveries except in the

event of an emergency.  (2/7/96 Memorandum from Graham to
Arrington; 12/14/95 Memorandum from Guyton to Pate; 6/15/94
Memorandum from Newton to All Personnel.)  Plaintiff filed a
grievance for Ms. Powell's unprofessional conduct in asking
plaintiff to make the delivery.  (12/14/95 Memorandum from Guyton
to Pate.)  Plaintiff was suspended for one day, for her refusal
to make the delivery.  (Guyton Aff. ¶ 9, at 7; 2/7/96 Memorandum
from Graham to Arrington; 12/20/95 Decision Upon Determination
Hearing; Graham Aff. ¶ 6.)  Personnel Director Gordon Graham
conducted plaintiff's appeal hearing and determined that Powell
was authorized to give the paralegals work instructions and that
plaintiff should have complied with Powell's instruction.
(Graham Aff. ¶¶ 4, 6.)  The suspension was upheld by Mayor
Arrington.  (2/7/96 Memorandum from Graham to Arrington.)
According to plaintiff, paralegal J.L. Chestnut and Assistant
City Attorney Michael Melton lied at plaintiff's hearing about
the event.  (Guyton Dep'n at 44-47, 130-32.)  Pate subsequently
distributed a memorandum to everyone in the office stating that
whenever an attorney asks a paralegal or secretary to perform any
reasonable task, the paralegal or secretary should perform the
task without objection.  (Pate Aff. ¶ 11.)

     In 1996, City Attorney Demetrius Newton occasionally stared

at plaintiff in the office from behind doors.  (Guyton Dep'n at
372-76 & Exh. 19.)  During that time, Newton once tried,
unsuccessfully, to touch plaintiff's hair.  (Guyton Dep'n at
230.)  Newton never touched plaintiff in an offensive manner.
(Guyton Dep'n at 233.)

On February 27, 1996, plaintiff complained to Chief
Assistant Attorney William Pate about "harassment" by Claims
Administrator Jacqueline Belcher, based on Belcher's "constant
malicious comments directed towards" plaintiff, such as
statements regarding plaintiff's messiness.  (2/27/96 Memorandum
from Guyton to Pate.)  Belcher was reprimanded on March 19, 1996
for unrelated conduct towards other Law Department employees.
(3/19/96 Letter from Pate to Belcher.)

On April 17, 1996, plaintiff sought to amend her April 28,
1995 charge of discrimination with complaints relating to her
office conditions, her workload, sexual harassment by Newton,
performance evaluations, December 1995 suspension, and conduct by
Belcher.  (Guyton Dep'n at 281-84 & Exh. 19.)  On April 24, 1996,
plaintiff filed a second charge of discrimination against the
City of Birmingham Law Department with the EEOC, which was
amended on May 14, 1996.  (Guyton Dep'n Exhs. 16 & 17.)

Plaintiff was asked by City Attorney Patricia Burns to

10

deliver two motions to the court on May 6, 1996; plaintiff

responded that she was going on her break or to the restroom.

(Notice of 5/9/96 Determination Hearing; Guyton Dep'n at 120-22.)

On May 10, 1996, Pate determined that, while plaintiff had

violated Jefferson County Personnel Board Rules, he would not

impose disciplinary action due to plaintiff's promise to "respond

positive[ly]" whenever "requested to do any reasonable act by

attorneys or other personnel of the Law Department." (5/10/96

Decision Upon Determination Hearing.)  Around this time, Pate

told plaintiff that her first charge of discrimination had made

him "sick." (Guyton Dep'n at 148.)  When plaintiff responded

that the charge was justified, Pate told her that he would "drop"

the entire matter.  (Guyton Dep'n at 148.)

On July 17, 1996, senior legal secretary Patricia Powell

threw an envelope on plaintiff's desk and asked her to deliver

the envelope to the addressee, during plaintiff's lunch hour.

(Guyton Dep'n Exh. 4.)  When plaintiff complained to Pate about

this "harassment," Pate asked her to clarify the word "threw."

(Guyton Dep'n Exh. 5.)  Plaintiff told Pate that he obviously was

not interested in investigating the matter due to his friendship

with Powell.  (Guyton Dep'n Exh. 4.)

Powell once commented to plaintiff that black women should

11

date black men; plaintiff had a friendship with a white man at
the time.  (Guyton Dep'n at 118-19.)

In September of 1997, Pate told plaintiff to copy and sort
for distribution the weed assessments in order to help a
secretary catch up on the weed assessment work.  (9/8/97
Memorandum from Pate to Guyton.)  Plaintiff refused to do so,
claiming that her medical condition prohibited her from
completing the assignment and that she should not have to help a
secretary who was unable to complete her assignments.  (10/28/97
Memorandum from Smith to Arrington; 9/8/97 Memorandum from Guyton
to Pate; 9/17/97 Memorandum from Guyton to Pate; Pate Aff. ¶ 15.)
Pate told Guyton to request in writing any accommodations
required in the performance of her assigned duties.  (9/11/97
Memorandum from Pate to Guyton.)  Plaintiff was suspended for
five days for her refusal to perform her assigned work.
(10/28/97 Memorandum from Smith to Arrington; 9/19/97 Decision
Upon Determination Hearing.)  On appeal, the Office of Personnel
and Mayor Arrington concluded that the suspension was proper
because, per Pate's conversation with plaintiff's doctor,
plaintiff could perform the assignment if allowed to sit, and
Pate told plaintiff that she could get a chair.  (10/28/97
Memorandum from Smith to Arrington; Pate Aff. ¶ 15.)

12

On August 7, 1998, Pate asked plaintiff to perform copying, collating, and distribution on all weed assessment related matters until further notice.   (8/7/98 Memorandum from Pate to Guyton.)

### IV. Applicable Substantive Law and Analysis

Plaintiff's complaint contains the following claims: (1) retaliation under Title VII; (2) disparate treatment on the basis of sex and/or race under Title VII; (3) sexual harassment in the form of a hostile work environment under Title VII; (4) outrage under state law; and (5) invasion of privacy under state law. Defendant's motion for summary judgment asserts that plaintiff has failed to establish a prima face case for any of plaintiff's claims against defendant.   The Court will address plaintiff's claims separately.

**A.   Threshold Issues**

**1.   Statute of Limitations for Title VII Claims**

The present case is based on plaintiff's April 24, 1996 charge of discrimination.[2]   A charge of discrimination relates to

_____

[2] Plaintiff's first EEOC charge, filed April 28, 1995, is not relevant to this action except as a statutorily protected activity in the retaliation claim because plaintiff failed to file suit within 90 days of receipt of her October 17, 1995 right to sue letter.   See 42 U.S.C. § 2000e-5(f)(1) (1994).

13

action occurring no earlier than 180 days from its date of
filing.  42 U.S.C. § 2000e-5(e)(1) (1994).  One exception to this
rule is the continuing violation doctrine, which accommodates
"plaintiffs who can show that there has been a pattern or policy
of discrimination continuing from outside the limitations period
into the statutory limitations period, so that all discriminatory
acts committed as part of this pattern or policy can be
considered . . . timely."  Hardin v. S.C. Johnson & Son, Inc.,
167 F.3d 340, 344 (7th Cir. 1999) (citation and internal
quotations omitted); accord Beavers v. American Cast Iron Pipe
Co., 975 F.2d 792, 796 (11th Cir. 1992).  The continuing
violation doctrine is applicable only if it would have been
unreasonable to expect the plaintiff to sue before the statute of
limitations run, i.e., where the conduct could be recognized as
actionable harassment only in light of subsequent events
occurring within the period of the statute of limitations.  See
Galloway v. General Motors Serv. Parts Operations, 78 F.3d 1164,
1167 (7th Cir. 1996).

     Plaintiff's Title VII claims fall into two general
categories: (1) unwelcome sexual advances from defendant City
Attorney Demetrius Newton and (2) discrimination and retaliation
in the form of suspensions, unreasonable work assignments,

14

unfavorable performance reviews, undesirable office conditions, and general "malicious comments" regarding plaintiff's character and/or work ethic by supervisors.  Because the two categories bear little relation to each other and thus cannot be considered part of the same pattern or policy of discrimination, they will be addressed separately.

As to the sexual conduct by Newton, plaintiff presented the following evidence: In 1992, Newton once asked plaintiff out for drinks.  In 1993 and 1994, Newton made several sexual comments to plaintiff.  In 1996, Newton occasionally stared at plaintiff and once attempted to touch plaintiff's hair.  There is no evidence of any offensive conduct by Newton in 1995.  The fact that there was a one year gap between alleged discriminatory incidents weighs heavily against finding a continuing violation, because of the frequency and permanence factors.  C.f. Filipovic v. K&R Express Sys., Inc., No. 98-1114, 1999 WL 250312, at *6 (7th Cir. Apr. 28, 1999) (eight year gap); Gipson v. KAS Snacktime Co., 171 F.3d 574, 579 (8th Cir. 1999) (twenty-one month gap); Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 716 (3d Cir. 1997) (seven month gap), cert. denied, 118 S. Ct. 1079 (1998). Because Newton's alleged conduct cannot reasonably be linked together into a single chain or course of conduct to defeat the

15

statute of limitations, Newton's sexual advances and/or comments

prior to October 27, 1995 are not actionable under Title VII.[3]

Plaintiff characterizes the second category of conduct -

discrimination and retaliation in the form of suspensions,

unreasonable work assignments, unfavorable performance reviews,

undesirable office assignments, and "malicious comments"

regarding plaintiff's character and/or work ethic by supervisors

- as continuing symptoms of a hostile work environment filled

with discrimination.  Undesirable work assignments, performance

reviews, and suspensions each constitute a discrete employment

decision, because they would entail a separate factual inquiry

that compared plaintiff with other similarly situated employees.

C.f. DeNovellis v. Shalala, 124 F.3d 298, 311 (1st Cir. 1997)

(holding assignments to various undesirable positions to be

distinct events).  Likewise, each failure to comply with a

request for a better office requires a separate analysis

involving the availability of office space and the treatment of

similarly situated employees at that time.

---

[3] In addition, plaintiff's first EEOC charge contained
allegations relating to Newton's conduct.  She cannot now argue
that a reasonable person would not have perceived Newton's
conduct to be actionable under Title VII until after October 27,
1995.  See Soso Liang Lo v. Pan Am. World Airways, Inc., 787 F.2d
827, 828 (2d Cir. 1986).

The only possible continuing violation in this case is the alleged "malicious comments" by Claims Administrator Jacqueline Belcher and senior legal secretary Patricia Powell.  Plaintiff has not informed the Court of when the comments by Powell and Belcher were made.  Nonetheless, the Court will assume for purposes of this motion that the comments made by Belcher and Powell either occurred subsequent to October 27, 1995 or were part of a continuing violation.  As to all other wrongs alleged by plaintiff occurring before October 27, 1995, defendants' motion for summary judgment on the Title VII claims is due to be granted.

### 2.    Title VII Claims Against the Individual Defendants

Title VII imposes liability upon employers, not individuals. 42 U.S.C. §§ 2000e & 2000e-2 (1994); <u>Williams v. Banning</u>, 72 F.3d 552, 555 (7th Cir. 1995); <u>Busby v. City of Orlando</u>, 931 F.2d 764, 772 (11th Cir. 1991) (interpreting earlier version of Title VII). Therefore, the individual defendants are entitled to judgment as a matter of law as to all Title VII claims asserted against them.

### 3.    Statute of Limitations in State Law Claims

The statute of limitations for invasion of privacy and outrage is two years.  Ala. Code § 6-2-38(l) (1993); <u>Travis v. Ziter</u>, 681 So. 2d 1348, 1350 n.1 (Ala. 1996); <u>Jennings v. City of</u>

Huntsville, 677 So. 2d 228, 229-30 (Ala. 1996).  Plaintiff filed

her initial complaint on October 8, 1997.  Any conduct occurring

prior to October 8, 1995 is time barred for purposes of the state

law claims, and defendants' motion for summary judgment is due to

be granted as to the state law claims as they relate to the time-

barred conduct.

**B.   Sexual Harassment Claim Against the City[4]**

Section 703(a) of Title VII prohibits an employer from

failing or refusing to hire or discharging any individual, or

otherwise discriminating "against any individual with respect to

---

[4] Although plaintiff does not use the terms "racial
harassment" or "retaliatory harassment" in her complaint, her
allegations make it difficult to discern whether plaintiff
intended to include a claim for racial or retaliatory harassment
as well as one for sexual harassment.  (Guyton Dep'n Exh. 19)
("Nothing has changed regarding my harassment (sexual, race and
retaliation).").  Giving a pro se plaintiff the benefit of the
doubt, the Court will address a possible racial harassment as
well in conjunction with the sexual harassment claim.  As to the
allegation of retaliatory harassment, it is unclear whether such
a cause of action exists in the Eleventh Circuit.  See generally
Gunnell v. Utah Valley State College, 152 F.3d 1253, 1264-65
(10th Cir. 1998) (discussing the split among the circuits on this
issue).  However, even if such a cause of action does exist,
plaintiff presented no evidence tending to show that supervisors
at the City of Birmingham Law Department orchestrated or condoned
and encouraged hostility on the part of plaintiff's co-workers.
C.f. id. at 1265.  More importantly, the friction between
plaintiff and her coworkers existed long before she filed her
first EEOC charge in April 1995; therefore, no causal link can be
established in a retaliatory harassment claim.

his compensation, terms, conditions, or privileges of employment, because of such individual's" sex or race.   42 U.S.C. § 2000e-2(a)(1) (1994).   Title VII permits two types of claims against an employer: hostile work environment and discrimination in the form of a tangible adverse employment action.   <u>Burlington Indus., Inc. v. Ellerth</u>, 118 S. Ct. 2257, 2270 (1998); <u>Faragher v. City of Boca Raton</u>, 118 S. Ct. 2275, 2292-93 (1998).   A claim of hostile work environment requires a showing that (1) the employee belongs to a protected group; (2) the employee was subject to unwelcome harassment; (3) the harassment complained of was based upon sex or race; and (4) the harassment complained of affected a term, condition, or privilege of employment.   <u>Henson v. City of Dundee</u>, 682 F.2d 897, 903-04 (11th Cir. 1982).   The fourth element requires evidence of severe, pervasive, and gender-charged or racially charged conduct that permeates the workplace to such an extent that the terms and conditions of the plaintiff's employment are affected.   <u>Edwards v. Wallace Community College</u>, 49 F.3d 1517, 1521 (11th Cir. 1995).

The severe, pervasive conduct alleged by plaintiff consists of City Attorney Demetrius Newton occasionally staring at plaintiff, Newton's unsuccessful attempt to touch plaintiff's hair, and senior legal secretary Patricia Powell's comment that

black women should date black men.  This conduct hardly rises to

the level of a hostile work environment.  The Supreme Court has

repeatedly emphasized that this cause of action is limited to

extreme work conditions.  See, e.g., Faragher v. City of Boca

Raton, 118 S. Ct. 2275, 2284 (1998); Oncale v. Sundowner Offshore

Servs., Inc., 118 S. Ct. 998, 1003 (1998).

As part of her hostile work environment claim, plaintiff

further alleges that she was discriminated against with respect

to suspensions, work assignments, poor office conditions, and

performance evaluations; that she was subjected to "malicious

comments" by Claims Administrator Jacqueline Belcher; and that

senior legal secretary Patricia Powell once "threw" an envelope

at plaintiff, yet plaintiff identifies no comments or conduct

indicating a discriminatory attitude toward women or blacks,

except those by Newton and Powell discussed above.  Belcher's

comments and Powell's envelope tossing lack an inherent sexual or

racial aspect and thus cannot serve as the basis for a hostile

work environment claim under Title VII.  See Hardin v. S.C.

Johnson & Son, Inc., 167 F.3d 340, 345 (7th Cir. 1999).

Similarly, the evidence of the suspensions, poor performance

evaluations, office conditions, and work assignments, while

probative with respect to plaintiff's disparate treatment claim,

20

simply cannot be characterized as creating an "atmosphere charged
with [gender or race-based] hostility." E.E.O.C. v. Beverage
Canners, Inc., 897 F.2d 1067, 1068 (11th Cir. 1990); see also
DeNovellis v. Shalala, 124 F.3d 298, 311 (1st Cir. 1997) (holding
that undesirable job assignments do not support a pervasive
hostile environment claim).  Because plaintiff has failed to put
forth a prima facie case, defendants' motion for summary judgment
is due to be granted with respect to the sexual harassment claim
(and any possible racial harassment claim) against the City of
Birmingham.

## C.   Race & Sex Discrimination Claim Against the City

Under Title VII, a plaintiff claiming disparate treatment
has the burden of proving that race or sex (or other prohibited
reason) was a determining factor in the employer's adverse
decision.  Texas Dep't of Community Affairs v. Burdine, 450 U.S.
248, 253-54 (1981).  Initially, a plaintiff must establish a
prima facie case in one of three ways: by meeting the four-
pronged test set out in McDonnell Douglas Corp. v. Green, 411
U.S. 792 (1973); by direct evidence of discriminatory intent; or
through statistical proof.  Holifield v. Reno, 115 F.3d 1555,
1561 (11th Cir. 1997).  Because plaintiff did not submit
statistical evidence, the Court need only address the first two

methods.

"Direct evidence of discrimination [is] evidence which, if believed, would prove the existence of a fact [at issue] without inference or presumption." <u>Carter v. City of Miami</u>, 870 F.2d 578, 581-82 (11th Cir. 1989).  The only direct evidence offered by plaintiff of any racial or sexual bias is a single comment by a coworker that black women should date black men.  However, only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of race or sex constitute direct evidence of discrimination.  <u>C.f.</u> <u>id.</u> at 582 (age discrimination case).  The isolated comment in the present case, at most, suggest discrimination, leaving the trier of fact to infer discrimination from the evidence; by definition, the evidence is circumstantial.  <u>See</u> <u>Earley v. Champion Int'l Corp.</u>, 907 F.2d 1077, 1081-82 (11th Cir. 1990).

A plaintiff may establish a prima facie case with circumstantial evidence by proving that (1) plaintiff is a member of the protected race or sex class; (2) she was subject to adverse employment action; (3) her employer treated similarly situated employees outside her classification(s) more favorably; and (4) she was qualified to do the job.  <u>See</u> <u>Holifield</u>, 115 F.3d at 1562.  Plaintiff argues that her suspensions in December 1995

22

and September 1997, low performance evaluation in November 1995,

work assignments on the weed matter, and office conditions were

based on her sex and/or race.[5]

*November 1995 Poor Performance Evaluation*[6]

In November of 1995, plaintiff received a "below

expectations" score on her performance appraisal form in the

"meets departmental requirements on compliance with rules,

policies, and procedures" category  and a "needs improvement"

mark in the "delivers subpoenas" and "files legal documents"

categories.  Plaintiff has presented no evidence as to the

performance evaluations of similarly situated employees, and the

fact that a black female received a poor performance evaluation

does not automatically infer a racial or sexual animus.  Because

plaintiff is unable to make out a prima facie case on this claim,

the City of Birmingham is entitled to judgment as a matter of law

---

[5] In her complaint, plaintiff also contends that she was
constructively discharged.  However, plaintiff, at the time she
filed her complaint, was still employed by defendant City of
Birmingham Law Department and thus cannot claim constructive
discharge.

[6] Plaintiff has also complained about other performance
evaluations from 1993 through 1995.  The other evaluations give
plaintiff an overall grade of "excellent"; they can hardly be
termed adverse employment decisions and thus will not be
discussed.

23

with respect to the Title VII claim based on a poor performance
evaluation.

*December 1995 and September 1997 Suspensions*[7]

In cases involving alleged racial or sexual animus in the
application of discipline for violation of work rules, a
plaintiff must show that either (1) she did not violate the work
rule or (2) she engaged in misconduct similar to that of a person
outside the protected class, and the disciplinary measures
enforced against her were more severe than those enforced against
other persons engaging in similar misconduct.   Jones v. Gerwens,
874 F.2d 1534, 1540 (11th Cir. 1989).  Plaintiff has not put
forth any evidence regarding the treatment of other City of
Birmingham employees who have violated work rules but rather
contends that she did not violate the work rules, and thus her
suspensions in December 1995 and September 1997 for refusal to
perform assigned work or to deliver documents were unwarranted.

---

[7] Plaintiff also complains of Chief Assistant Attorney
Pate's treatment of an event involving plaintiff and City
Attorney Patricia Burns.  In May 1996, plaintiff allegedly
refused to comply with a request to deliver a document made by
Burns.  Following a hearing, Pate decided not to impose
disciplinary action.  Because no adverse employment action was
imposed, plaintiff has not put forth a prima facie case with
respect to this event.

24

Even if plaintiff could show that she did not violate a work rule, an employer can successfully rebut any prima facie case of disparate treatment by showing that it honestly believed the employee committed the violation. <u>Jones</u>, 874 F.2d at 1540. Plaintiff was suspended on both occasions following a hearing. None of the evidence submitted to the Court suggests any racial or sexual animus in the City's decision to suspend plaintiff on two occasions or in its decision to assign some of the weed matters to plaintiff. "Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules." <u>Nix v. WLCY Radio/Rahall Communications</u>, 738 F.2d 1181, 1187 (11th Cir. 1984). Because defendant City of Birmingham reasonably believed that plaintiff had violated work rules, it cannot be held liable for discrimination under Title VII with respect to the December 1995 and September 1997 suspensions.

*Work Assignments on Weed Matters*

Plaintiff contends that she was often given additional work assignments relating to weed matters while other paralegals were not. Plaintiff stated in a document styled "Formal Charge of Discrimination," written by plaintiff in April of 1996, plaintiff claimed that she was "continually given the heavy workload simply

25

because of the fact that [paralegal] J.L. Chestnut is not
qualified to do any work, nor does he attempt to learn." (Guyton
Dep'n at 281-87 & Exh. 19.)  Title VII addresses discrimination,
not unfairness.  Because plaintiff has submitted no evidence from
which the Court can infer a racial or sexual animus, and has
admitted that reason for her additional work assignments is the
incompetence of her fellow coworkers, plaintiff has no remedy for
a heavy workload under Title VII.

*Office Conditions*

Plaintiff's office is small, has poor ventilation, and is
either too hot or too cold most of the time.  Plaintiff has
repeatedly been denied clerical assistance, which plaintiff
insists is necessary to the performance of her job.

As to the clerical assistance, plaintiff fails offer the
Court any basis for inferring that the denial of clerical
assistance was on the basis of sex or race.  No evidence has been
submitted to the Court regarding the clerical support offered to
similarly situated employees outside the protected classes of
race and sex.  Therefore, the failure of defendant City of
Birmingham to comply with plaintiff's request or requests for
clerical assistance is not actionable under Title VII.

As to plaintiff's small office with poor ventilation and

extreme temperatures, plaintiff notes that two male paralegals,
Chestnut and Robinson, were given larger offices (previously used
by attorneys), while she was not offered a larger office.[8]  There
is conflicting evidence as to whether plaintiff was also offered
a larger office.  (Compare Guyton Dep'n Exh. 20 with Guyton Dep'n
at 302-03.)  There is also very little evidence regarding the
temperature and ventilation conditions of plaintiff's current
office.  Defendant City of Birmingham has offered no explanation
for the disparity in office conditions among male and female
paralegals.

There is a genuine issue of fact as to (1) whether plaintiff
was offered a larger attorney's office and (2) if not, whether
the failure to do so constitutes an adverse employment decision
under Title VII.  See generally Doe v. DeKalb County Sch.
District, 145 F.3d 1441, 1452-53 (11th Cir. 1998) (adversity must
be material using an objective standard); Wideman v. Wal-Mart
Stores, Inc., 141 F.3d 1453, 1456 (11th Cir. 1998)
("discrimination" not limited to ultimate employment decisions).
Thus, plaintiff's Title VII claim for disparate treatment on the

---

[8] Plaintiff has failed to discuss the race of the two male
comparators; therefore, the Court will treat plaintiff's
allegation as one for discrimination on the basis of gender, and
not on the basis of race.

basis of sex in the refusal to offer plaintiff a larger attorney's office similar to the ones occupied by two male paralegals must survive defendants' motion for summary judgment.

**D.   Retaliation Claim Against the City**

In order to establish a prima facie case of retaliation, a plaintiff must show that (1) there was a statutorily protected participation, such as a claim of discrimination; (2) an adverse employment action occurred; and (3) there was a causal link between the participation and the adverse employment action. Bigge v. Albertsons, Inc., 894 F.2d 1497, 1501 (11th Cir. 1990) (per curiam). Once the plaintiff establishes a prima facie case, the employer must proffer a legitimate, nondiscriminatory reason for the adverse employment action. Holifield v. Reno, 115 F.3d 1555, 1566 (11th Cir. 1997); EEOC v. Reichhold Chems., Inc., 988 F.2d 1564, 1571-72 (11th Cir. 1993). If the employer offers legitimate reasons for the action, the plaintiff must then demonstrate that the proffered explanation is a pretext for retaliation. Holifield, 115 F.3d at 1566. Plaintiff contends that her suspensions in December 1995 and September 1997, low performance evaluation in November 1995, and work assignments on the weed matter were motivated by retaliation for her first EEOC charge filed on April 28, 1995.

*November 1995 Poor Performance Evaluation*

From April 1993 through April 6, 1995, plaintiff consistently received excellent scores on her performance evaluations. However, in November of 1995, following plaintiff's April 28, 1995 EEOC charge of discrimination, plaintiff received a "below expectations" score on her performance appraisal form in the "meets departmental requirements on compliance with rules, policies, and procedures" category and a "needs improvement" mark in the "delivers subpoenas" and "files legal documents" categories. Defendant City of Birmingham has presented no evidence relating to how these performance evaluations are used by the Personnel Board or why plaintiff merited such a low performance evaluation. There is a genuine issue of material fact remaining as to whether this low performance evaluation constitutes an adverse employment action. See generally Doe v. DeKalb County Sch. District, 145 F.3d 1441, 1452-53 (11th Cir. 1998) (adversity must be material using an objective standard); Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1456 (11th Cir. 1998) ("discrimination" not limited to ultimate employment decisions).

*December 1995 and September 1997 Suspensions*

Both of these suspensions occurred after plaintiff's filing

of her first EEOC charge in April 1995. Because plaintiff's employer knew of the April 1995 charge of discrimination at the time plaintiff was suspended, plaintiff has put forth a prima facie case of retaliation.

However, defendant has produced a legitimate, nondiscriminatory reason for the adverse employment decisions: violation of work rules. Plaintiff has produced no evidence tending to show that defendant's proffered reason - violation of work rules - constitutes a pretext for retaliation. The evidence shows that, at the times plaintiff was suspended, defendant City of Birmingham honestly believed that plaintiff had violated a work rule. Therefore, defendant City of Birmingham is entitled to judgment as a matter of law with respect to this claim.

*Work Assignments on Weed Matters*

Plaintiff contends that she was often given additional work assignments relating to weed matters while other paralegals were not. In a document styled "Formal Charge of Discrimination," written by plaintiff in April of 1996, plaintiff claimed that she was "continually given the heavy workload simply because of the fact that [paralegal] J.L. Chestnut is not qualified to do any work, nor does he attempt to learn." (Guyton Dep'n at 281-87 & Exh. 19.) Plaintiff has provided the Court with no evidence

30

causally linking her workload to her filing of an EEOC charge.
Indeed, plaintiff complained about her workload before the April
1995 EEOC charge was ever filed.  (10/5/94 Memoradum from Guyton-
Samudio to Thompson Regarding Formal Complaint of Harassment at
Work Place and Discrimination.)  Because there is no causal link
between plaintiff's statutorily protected activity and her
workload, plaintiff has failed to put forth a prima facie case of
retaliation based on work load.

*Office Conditions*

Plaintiff's office is small, has poor ventilation, and is
either too hot or too cold most of the time.  Plaintiff has
repeatedly been denied clerical assistance, which plaintiff
insists is necessary to the performance of her job.

Plaintiff has failed to produce evidence relating to the
timing of these events, except that one of her many requests for
another office and clerical assistance was made in August of
1997.  Because plaintiff is unable to offer the Court a timeline
as to the relationship between her statutorily protected
activities and the City of Birmingham's denial of her requests
for a new office and for clerical assistance, her claim for
retaliation based upon those events must fail for failure to put
forth evidence tending to establish a causal link.

**E.   Outrage Claims**

A claim for outrage requires a plaintiff to present evidence
of "conduct so outrageous in character and so extreme in degree
as to go beyond all possible bounds of decency, and to be
regarded as atrocious and utterly intolerable in a civilized
society."   American Road Serv. Co. v. Inmon, 394 So. 2d 361, 365
(Ala. 1980).   Plaintiff has shown at most a pattern of petty
hostility by coworkers; the tort of outrage does not recognize
recovery for "mere insults, indignities, annoyances, petty
oppressions, or other trivilities."   Id. at 364-65 (internal
quotation marks and citation omitted).   Because the evidence
fails to show attrocious or utterly intolerable conduct by any
defendant after October 8, 1995, defendants are entitled to
judgment as a matter of law as to that claim.

**F.   Invasion of Privacy Claims**

Alabama courts have recognized the right of a person to be
free from unwarranted publicity or unwarranted appropriation or
exploitation of one's personality, publication of one's private
affairs with which the public has no legitimate concern, and the
wrongful intrusion of one's private activities in such manner as
to outrage or cause mental suffering, shame or humiliation to a
person of ordinary sensibilities.   See Norris v. Moskin Stores,

32

Inc., 132 So.2d 321 (Ala. 1961); Abernathy v. Thornton, 83 So.2d

235 (Ala. 1955); Smith v. Doss, 37 So.2d 118 (Ala. 1947).

Plaintiff complains that defendants have intruded upon her

private activities so as to invade her privacy under Alabama law.

Plaintiff has pointed the Court to no such intrusion past October

8, 1995 but rather complains of time-barred events involving

defendant Belcher.  Because plaintiff cannot put forth a prima

facie case against any defendant with respect to her claim of

invasion of privacy, defendants are entitled to judgment as a

matter of law on that claim.

     In summary, the individual defendants are entitled to

judgment as a matter of law as to all claims asserted against

them by plaintiff.  The City of Birmingham is entitled to

judgment as a matter of law as to all claims asserted by

plaintiff, except as to (1) a Title VII claim for sex

discrimination on the basis of the City's failure to assign

plaintiff a larger, more desirable office; and (2) a Title VII

claim for retaliation on the basis of plaintiff's November 1995

performance evaluation.  Plaintiff filed multiple federal and

state law claims against the individual defendants, all of which

being adjudicated adversely to plaintiff.  She filed multiple

federal and state law claims against the City of Birmingham, all

but two of the federal law claims being adjudicated adversely to

plaintiff.   Because of the elimination of ten defendants and most

of the claims against the remaining one defendant, the Court

determines that there is no just reason for delaying the entry of

a partial final judgment and expressly directs the entry of such

a judgment pursuant to Federal Rule of Civil Procedure 54(b).   A

separate Rule 54(b) partial final judgment will be entered.

DONE this $\underline{26}^{th}$ day of May, 1999.

SENIOR UNITED STATES DISTRICT JUDGE